Good morning. Good morning. And may it please the court. Teresa Summers of Morrison & Forster, representing Plaintiff Appellant Jeffrey Kelce. I would like to reserve two minutes for rebuttal. There are two reasons why Mr. Kelce stated a valid denial of access to court's claim. First, Mr. Kelce did all he was supposed to do to bring a claim under the California Tort Claim Act. The state did not do what they were supposed to do. At every step, Mr. Kelce complied with the procedures to file a grievance. At every step, the state ignored Mr. Kelce's claims. If that's true, isn't that — doesn't that get around the exhaustion requirement in the California Tort Claims Act? Your Honor, no, that does not excuse exhaustion. That means the quote that you have in your brief from the California Tort Claims Act says that if a plaintiff does not comply with these requirements, the exhaustion, et cetera, or cannot because of the action of state officials, the potential claim cannot be brought against the state or its officials. Or maybe I'm reading this wrong. Your Honor, the board — California law is clear that both the board and the courts require exhaustion. Under California law — Even if it's — even if he's prevented by the conduct of state officials? That is correct. There is no — there's no futility exception to the exhaustion requirement. And is there a California case that says that? There's a — the Wright case held that there is no such thing as substantial compliance and that substantial compliance with exhaustion is not sufficient. But that's not — that's different. Does the — is there a California case that holds that we are the prison officials, prevent the defendant from exhausting his remedies, as you say they did, that he's not excused? I have not found a case that — that states that there is some sort of exception to the — to the exhaustion requirement. So there's no case that I have found that would permit Mr. Kels to proceed forward. In fact, that the case is indicating — But there's no case that would prohibit it. Well, and I — that's where the Wright case comes in, and it explains that substantial compliance is not sufficient. Also, the Wright case cites two various cases under habeas corpus law that — that show that a writ of habeas corpus was denied because of allegations that the department didn't do what they were supposed to do. So it — drawing an analogy to those cases, that would support the notion that exhaustion would not be excused. There are cases in California that say that if prison officials prevent them from filing a writ of habeas corpus, he — he — he — he — Right. As noted in the — That is correct, Your Honor. As noted in the Wright case, which cites two — Thompson and also Muzalski, in those cases, a petition for writ of habeas corpus was denied because the inmates And that the department's failure to make a timely decision, the Court looked at that and still denied the petition for writ of habeas corpus in those cases. And, Your Honor, there are good reasons why exhaustion is required. The California Tort Claim Act is a partial waiver of sovereign immunity, and the — it is important to hold the agency responsible. The grievance regulations are set forth in detail to provide that the agency has first level of review. The agency should be held responsible to — to follow the very grievance regulations that the State has set up. It would be contrary to the whole purpose of these regulations and the exhaustion requirements to permit the courts to have the first review of this at the first instance. There's hundreds of prisoner grievance suits that it makes sense to — for those to be determined at the first instance at the agency level. It's sort of strange to hear you making that argument. I assume that if you were in a California court trying to get around the — the — the exhaustion requirement, you would be making the exact opposite argument. Well, the — the point is, I believe, Your Honor, that the — the state of the law in California is that there is no excuse for exhaustion. And this was the reason why Mr. Kels was barred from proceeding with his suit. I'd like to also point out to the Court that, importantly, there was a — a formed letter from the board that stated that the grievance — that the petition to the board would be held in abeyance until all administrative remedies were exhausted. This is found in the Excerpts of Record, page 136. And Jeffrey Kels submitted this letter to the district court, and the district court considered the letter and held that, as a result, exhaustion was required. Also, Mr. Kels simply did not know about the requirement to go to the board. And the prisoner regulations point out at Title 153084.7e3, that points out that a prisoner won't even be informed about proceeding to the board until after the third-level grievance is acted upon. Further, he — a prisoner is not given instructions to proceed to the board until after the third level is acted upon. And as is very clear in looking at the grievance regulations, a third-level review would never be acted upon until the preceding one, the second level is, and that wouldn't be acted upon until the first level is, and so forth. Each step is required to be acted upon until the third level can be reached. And only at that point would a prisoner be informed of the opportunity and the right to go and to proceed at the board. What was it that was missing from this package? I'm sorry, Your Honor, missing from? Well, no. The claim is that he received some mail, and part of it was a package, and the package had been partially opened, and there were some items that were missing. What were they? That is right. The items that were missing were — his mother had sent him a pair of tennis shoes. One of the shoes was missing from the pair. Also, he had some underwear in there that was missing, and there were also some pencils and pens and some tobacco items that were missing from the package. So we're here in a United States courthouse, the second-highest court in the land, arguing about one shoe, some underwear, and tobacco? Your Honor, yes, we are. The damages of the package are approximately $420. I would like to point a strong analogy with the Phillips v. Hust case that came before this Court. And in that case, the facts are very similar. In that case, the prisoner was trying to file a petition for writ of certiorari, and he was not — he was barred from using the comb binding machine, which is required for him to file the writ. This is a petition for a missing Nike. Turning to the — Do you have the citation for the Wright case that you were referring to? I don't see it in your — cited in your brief. Yes, Your Honor. Let me see if I can get that. How's it spelled? Wright, W-R-I-G-H-T v. — I think it's 171 Pacific 3rd 20, right? I don't see it in your blue brief. Yes, it is. It's 122 Cal App 4659. Is it in your blue brief? Nope. I'm sorry. No, it was not in the blue brief. It's in the gray brief. The reply brief. Correct. Okay. There's also — Mr. Kels also stated a valid claim for a violation of due process. Logan v. Zimmerman Brush has established that a cause of action is a property right protected by due process. And because the State repeatedly ignored Mr. Kels' attempts to use the grievance process, he was not able to exhaust his administrative remedies, which is a prerequisite to bringing the claim under the California TORC Claim Act. Thus, Mr. Kels' cause of action was taken away from him without a meaningful opportunity to be heard. As established in Logan v. Zimmerman Brush, a cause of action is a property right that is protected. Here, the State has established a specific grievance procedure to safeguard the prisoner's right to bring a cause of action for damages. And contrary to the cases that are cited in the red brief, in this particular case, Mr. Kels is not seeking any particular or different grievance procedure. Rather, the procedure having been established, due process requires that this procedure be followed. Because the State did not follow this procedure, it denied Mr. Kels the opportunity to proceed with his claim, which violates due process, and it took away his property right to proceed with his cause of action in court. So how did he exhaust that claim? That — His access to the — your due process claim. First, he was not able to — for similar reasons, these two claims are intertwined. So the — what the remedy for the due process claim — No, no. I'm asking how he exhausted this particular claim that he was denied access. Well — He didn't. The due process claim, he attempted to exhaust. Right. Right. And that, I think — But, I mean, don't you find the irony of your argument when you are, on one hand, arguing that if the State prevents someone from exhausting, that, in fact, he's out, that it's an ironclad rule that exhaustion is required, and on the other hand, you're complaining about someone that is — the essence of his complaint is that the State prevented him from exhausting? Right. And then at the other end of the day, if we accept your argument that exhaustion is required, he didn't exhaust the exhaustion claim, really. That is exactly what the problem is here, that precisely the problem is that when a prisoner does all that they're supposed to do and the State does not follow their own regulations, it's a clear denial of access to court. The problem is that the grievance procedures that are set up here, the form that is required to be filled out, requires both sides to comply with their obligations to proceed through the process. There are cases, for example, the Woodford v. Goh case, where it has been held that if a prisoner fails to do what they're supposed to do, then — Right. And so here, it's a very similar situation, except the shoe is on the other foot, that the — The missing shoe, presumably. But the State is not doing what they are supposed to do, and we're asking this Court to demand that that happens and to permit Mr. Kels to go back to district court and to have his day in court and proceed with his claim. Do you want to save some time for rebuttal? Yes, Your Honor. Okay. Thank you for your argument. We appreciate your firm taking this on pro bono. Thank you, Your Honor. We'll hear from the Attorney General at this time. Ms. Esquivel? Thank you, Your Honor. Diana Esquivel from the office, California Office of the Attorney General, on behalf of the defendants. Good morning, Your Honor. Why not just sit down with this guy and find out what this missing stuff is worth? Is this a — this is a $400 case? That's what it comes down to, Your Honor. And it comes down to that because Mr. Kels did not pursue the State remedies still available to him outside of the administrative process. So you want him to pursue it and cost the State thousands and thousands of dollars defending regardless of what the ultimate cost is. That's what you want, right? Well, that's not what we want, Your Honor. Unfortunately, that's the end result when Mr. Kels stood back and did nothing to pursue his claim. I'm sorry to say that from this record. I'm sorry? It's hard to say that from this record. Well, Your Honor — If he'd done nothing at all, we wouldn't be here. He filed some claims and you say he didn't do anything. He filed grievances, Your Honor, with the prison officials. They were not responded to. He knew that on several occasions he tried to bypass the informal level and go directly to the first level. That was not responded to or told that he had to get an informal response. But he never tried to obtain director's level review by similarly bypassing the lower levels and submitting his appeal directly to the director's level. I know your office is well aware of the Eastern District, California, is one of the busiest in the nation. Yes. And it's inundated with prisoner complaints. And one of the reasons that we're working with is because sometimes the prison grievance system just doesn't work. And when I read this case, I can see why. We're alleviating these cases in Federal court when the State ought to be resolving it informally. That is correct, Your Honor. And it could have been resolved at the State level in a small claims court had Mr. Kells filed his claim with the Board. There were still remedies available to him. Do you agree that if he was obstructed or prevented by the conduct of prison, of the people at the prison, that he would be precluded from bringing an action on the California Tort Claims Act? No, Your Honor. I do not agree with that statement because under the California government code, there are various procedures that provide exemptions for the filing of a claim. First of all, I would like to point out that he could have filed a claim because nothing in Section 910 of the government code requires that a claimant prove exhaustion at that level. I would also point out that in the Wright case, which counsel cited to, is factually on point to defendant's position. There, the inmate filed his claim with the California Board only seven days after he had submitted his initial grievance. By the time when he filed his first amended complaint that is the subject of the demer and the Court's holding, he still had not received a final determination on that grievance, but the Board had denied it, which then allowed him to file his State cause of action to pursue his claims. We understand, I think, and you can correct me if I'm wrong, that it's the State's position that Mr. Kels was not prevented from exhausting his internal prison administrative remedies. Is that correct? That is correct, Your Honor, because that issue was never reached. We are not here on the court. I've got a follow-up question. Okay. But we all understand that it's the State's position that he was not prevented from exhausting his administrative remedies, correct? That is correct, Your Honor. My follow-up question is this. You're here on behalf of the State of California. I'm here on behalf of the individual defendants, Your Honor. Okay. Will you concede that if Mr. Kels could establish that he was, in fact, prevented from exhausting his administrative remedies, that he could then pursue his tort claim in California State courts? Yes, Your Honor. He could have pursued it, despite the ---- Do you concede that? The question is not asked for fun. No, I understand that, Your Honor. I'm just ---- Do you concede that? Uh-huh. That he was prevented by prison authorities from pursuing his administrative remedies, that he could then pursue a tort claim in California State court? Yes, Your Honor. And the reason for that is twofold. First, the Board itself provides ---- I mean, the government court that governs the control board provides various remedies, everything from Section 911.4 and 6, that allow a claimant to file an application to be excused from filing a late claim based on excusable neglect. If the Board denies that application, the claimant can then file an application directly with the superior court to seek relief from complying with the claims presentation. And at that level, the superior court must make an independent determination, and that's under Government Code Section 946.6, Subdivision E, I believe, that then allows the court. At that time, Mr. Kaus could have presented all the facts that he alleged in this complaint, that he submitted the grievances at the various ---- about six or seven And as we cited to John Doe ---- I mean, John F. and the, if the Court will permit me, the Frederickson case, theories of estoppel apply if the conduct of the public entity or employee prevent the claimant from filing a claim either timely or altogether, then the government, the public entity or employee is then estopped from using the failure to comply with the Claims Act at that level. Is it still too late for him to bring an action on the California Tort Claims Act? I believe the statute of limitations has passed, Your Honor. But again, this ---- Would it be told during the pendency of this proceeding? I'm sorry? Would it be told during the pendency of this proceeding? He has six months to file a claim. I believe that that might have already passed before we even reached this level, Your Honor. And his one year ---- The case start ---- this case started when it was filed in the Eastern District? Correct, Your Honor. If the day it was filed, instead of filing in the Eastern District, he had gone to State I unfortunately do not know on what day this complaint was opened with the District Court, so I apologize to the Court for that. I do not know how long after the incident, upon discovering the process ---- Well, it looks like it's December of 2001. Ben, it believes he still would be within the one year statute of limitations that applied at that time for filing now another remedy that was available to him to file a cause of action directly with a superior court. Contrary to Mr. Kelce's position, there is an exception to exhaustion under California law. In the Campbell case, Campbell v. the Regents of California, cited in our answering brief, the Supreme Court of California recognized that there are exceptions and that that list it provided is not exhaustive, that there's different reasons. Also cited to Greenbault and Ogle in our case, the courts noted that there are exceptions for futility. There are exceptions based on fairness and equity. Had Mr. Kelce filed a cause of action with a superior court to recover for the loss of his property, he could have alleged exhaustion or excused from being ---- from exhausting. Well, if this ---- let me interrupt you. If this were a habeas corpus case and we were dealing with a failure to exhaust, one possible method of dealing with it is to ---- would be to hold the case in abeyance so the defendant could exhaust whatever State remedies were available to him. And if it's possible that there is a remedy available to him under California law, wouldn't that make the most sense? That is correct, Your Honor. I believe that is the right case to say that if there is not exhaustion, the proper remedy is to bring a writ of mandate in that situation to compel prison officials to process the claim. All of this for a missing tennis shoe and some underwear? Yes, Your Honor. Have you tried to settle this case anywhere along the line? I unfortunately do not know that, Your Honor. It's been pending longer than I've been with the Attorney General's office. What do you make of the magistrate's ---- your claim that, no, he didn't have to exhaust the remedies before filing, what do you make of the magistrate's judge's conclusion to the contrary? I'm going to quote. Although it appears plaintiff is correct in his contention that he must exhaust administrative remedies to seek relief in State court for the loss of his property. I believe the magistrate judge, Your Honor, reached the right conclusion based on the wrong reasoning. He relied on the letter. You disagree. I'm sorry. Yeah, he relied on the letter because the board sent the prisoner. He was advised that he had to exhaust. And you say, no, he doesn't have to exhaust. The board's completely wrong. The magistrate judge is wrong. And it should be obvious to everybody. Right? Well, Your Honor, it was wrong in the sense that the government court does provide for exemptions to filing a claim, provides remedies if they are untimely, and then if those are then exhausted, can pursue directly to the superior court to be relieved of filing a claim altogether. And the remedies are there in the government code that Mr. Kells could have pursued but didn't and did not allege that the defendants ever prevented him from filing his claim directly with the board, from filing an application, from filing an application with the superior court, or even from filing a cause of action directly with the superior court. Okay. So how is a prisoner who's confined supposed to figure all of this out? The board was mistaken, you say, that magistrate judge was misguided and didn't have all the exemptions. We have to look at the nuances of the Wright case to figure this out. How is an incarcerated prisoner supposed to work his way through the system on this? Your Honor, the regulations put him on notice. The California government code put him on notice of the remedies available to him. Those are the same procedures that all individuals, all litigants, all claimants have to pass. There is no exception for a prisoner as there is for any other person out in the street. If they want to seek relief from the court, they have to follow the procedures established by the State to reach the remedies that they seek. Could I ask, could I go back to my question? Maybe I didn't make myself clear. There's a California, I believe, supreme court case that holds that it is well settled that a public entity may be estopped from asserting the limitations of the CTCA where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act. Now, would you, why wouldn't the most sensible thing here be to hold this case in abeyance, let him go back and file not some writ of, whatever writ you said. Mandate. Mandate, but to file his claim under the California Tort Claims Act and allege that the reason I didn't exhaust my remedies was because agents or employees of the State prevented or deterred me from filing the claim. Because that remedy, Your Honor, was available to him in 2001 as it is today. That he decided. The case that I was referring to is a 2007 case. No, I understand that, Your Honor, but in terms of having the ability to file the claim, that right existed in 2001 as it does today. And the fact that he made a decision not to file a claim at that time, he should not then have the opportunity to go back and correct his errors. Well, let me see if I can focus it down, because I think I have the same question as my colleague. If we sent this back to the district court with instructions to hold the matter in abeyance while Kels attempts to pursue his remedies under the California Tort Claim Act, the State would be, and there he could say, I was prevented from exhausting. And the State would be free, your clients would be free to come in and say, No, no, no, he wasn't prevented. Here are the facts. There would be a factual determination whether he was or was not prevented. And presumably, if the case cited by Judge Korman is still good law, and he could establish that he was in fact prevented, he could then pursue a State claim. Is all of that correct? That is correct, your Honor. And it would not impair or take away any right from the State, correct? That is correct, your Honor. But again, we're looking at an issue in terms of that this right, this process that your Honor just explained, existed today as it did in 2001. And, Mr. ---- Did the State suggest that to the district court in this case? The answer is no, isn't it? I do not believe so, your Honor. I'm trying to recall if in the supplemental briefing requested by the magistrate judge, I believe the ---- some of these arguments were raised that he had the ability to pursue the tort ---- the government claim. No. My question is, in the proceeding in district court, did the State come forward, did your clients come forward and affirmatively say, your Honor, the best solution for this case is for you to hold the matter in advance, all of what's commonly done in habeas cases, and allow this individual to go to State court, present the claim, including his claim that he shouldn't be required to exhaust his prison remedies because he's prevented from doing so. We think he wasn't prevented, but that's the appropriate form. Did the State do that? No, your Honor. The defendants did not do that. So where are the shoes? I'm sorry? So where are the shoes? Where are the shoes? Long gone, your Honor. Long gone. But isn't that, at the end of the day, somebody just should have sat down and said, okay, where are the shoes? We don't have them. Let's make this right. Let's not ---- let's not entangle, let's not bring the legal machinery of the Federal Government all the way to the second, second-highest level of appeal in the Federal Government. And let's not ---- let's not invoke the machinery of the State of California judicial system, which is overworked as well. Maybe we should just find the shoes or give him his money. That's correct, your Honor. I agree with you. And ---- And so that gets to the larger issue, and I hope the State will take note of it, is that we really do expect the State to work out some of these grievance problems, because we have thousands and thousands of prisoner suits filed in the Eastern District of California, as you well know. Yes, your Honor. And I've taken some of those suits because we're trying to help out as visiting judges in that district, and a lot of the solutions are right within the four walls of the prison. Yes. Okay. Thank you, your Honor. You're over your time. Thanks for coming in today. Rebuttal? Counsel? What's wrong with doing what I suggested to Ms. Esquivel? Your Honor, I think that that would be a fair solution. I believe this case should be remanded to the district court. I think that Mr. Kels clearly did not have the opportunity to do that below, as is the letter that he submitted that shows that the board would not have provided him the opportunity. I think Mr. Kels, this record is very clear that Mr. Kels has shown that he was prevented by the acts of the State. He was prevented from exhausting his administrative remedies. And that's true, and he's confident in his ability to prove that. There should be no barrier to him proceeding in State court to recover the value of the missing items. I believe that is correct, your Honor. Well, you just – I asked you the same question on your directive. You said it couldn't happen. You gave the exact opposite answer, citing the Wright case when there appears to be California authorities, City of Stockton v. Superior Court, 171 Pacific 3rd 20, and other cases which say that where the State obstructs or otherwise interferes with the ability to file, you know, exhaust administrative remedies, it can be excused. Your Honor, perhaps I misunderstood your earlier question. I do apologize for that. But what the issue is, there's a little bit of a time conflict here, that if he would have done that back in 2001, he would not have been able to proceed with the board at that time because the – that's evidenced from the record. I'm talking about filing a claim under the California Tort Claims Act. You say exactly what you argue in your brief. I think it's at page 34 that he was obstructed by State officials from – from – from exhausting his remedies. Correct. And there are California cases contrary to what you argued on your direct that say that that can excuse the filing. Your Honor, in this particular situation, he – he had the – submitted the letter that he – he didn't personally receive it, but there was a form letter from the board that indicates that the board would not act on his claim until such time as he exhausted all of his administrative remedies. And that being the case, he was not able to proceed in district court. Your Honor, but you say in your brief that the – on page 34 that the acts of the defendants were an insurmountable obstacle to Mr. Kelsey exhausting his administrative remedies and effectively prevented Mr. Kelsey from filing his claim in State court. Correct. That's what you say. If you're right, his – his failure to exhaust his administrative remedies under the case that I just cited to you would be excused. He – he did not have the opportunity to present this before the State court because he – before filing in State court, he would have to exhaust his administrative remedies. The difficulty we're having here is that in your opening argument, you said that the state of the law is that even if he was prevented, then he can't pursue a tort claim. That was your argument. Correct. But that's not your argument now. Well, the argument is, as applied to him in his case, he was prevented from proceeding in State court. We all understand that. We've heard that three dozen times. Is it your position that if you could establish that he was in fact prevented, that that would excuse his failure to exhaust administrative prison remedies? I believe that Mr. Kell should have the opportunity to make that argument. He should be given the opportunity. And there's nothing in the California law that – that says even if you were prevented, you can't excuse your failure to exhaust. Is that correct? There's nothing in the California law that – The California law recognizes, does it not, let me state it positively, as Judge to prevent one from exhausting administrative remedies, that – that there's no requirement that there be exhaustion. Is that correct? That is correct. That is what was just read from that case. And that is quite different from what you argued in your opening argument. Just to go back one second, the – the – You're talking about two different types of exhaustion, aren't you? Yes. Yeah. But – but – but the theory should have theoretically applied to both. I think that's what we're struggling with. Right. I mean, if we – if we credit your main theory on prison exhaustion, that prevention excuses, that ought to apply to the separate exhaustion requirements if there are any in front of the tort claims, I would think. Right. And that's – that's – I mean, I think that's the odd thing about this from both perspectives. The State is arguing, no, you don't have to exhaust on one hand, but you do have to exhaust on the other hand, and you – and you have to – you're taking the opposite position, so. There is a just position. That's why, I mean, from our – at least from my perspective, we ought to have a uniform approach, and it seems to me more logical to say if you're prevented from exhausting, then – then you don't have to exhaust across the board. Right. And it – that is correct, Your Honor, and Mr. Kelce should have the opportunity to make that argument. He should be permitted his day in court to – to go forward with his case. So you wouldn't object to a – to what amounted to a ruling that would require the district court to hold this case in abeyance pending his filing of a California Tort Claims Act case? Well, preferably, I would like to see the case go back to the district court and let the district court make the decision as to whether – whether Mr. Kelce has stated a valid claim, whether – and that he can proceed with his claim. Could I ask you one last question? If I were in the district court right now, I'd shut off the microphones, and I'd say, how much do you want to settle this case? Well, I – well, I assume you're not averse to mediation, because I realize that there are larger issues involved than – than the 10 issues, but I assume that if – that you wouldn't object to – now that you've – both sides have clearly presented their particular case, that you wouldn't object to a reference to our mediation unit just to see if we could work all this out. Right. I think that the – that the court's mediation program is a very positive program and – Okay. Thank you for your argument. Thank you. Thanks, both sides, for their argument. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, Korman